**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norma Daniel,<br><br>                      Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>                      Defendant. | No. CV 12-01452-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's denial of Plaintiff's application for disability insurance benefits under Title II of the Social Security Act.

**I.   PROCEDURAL BACKGROUND**

On March 23, 2009, Plaintiff Norma Ann Daniel filed a Title II application for a period of disability and disability insurance benefits with the Commissioner of the Social Security Administration (the "Commissioner"), alleging that her disability began on February 26, 2009. (Record Transcript ("TR") 21). Plaintiff's claim was denied initially on July 1, 2009, and upon reconsideration it was denied again on February 17, 2010. (*Id*.).

Following the denials, on February 25, 2010, Plaintiff filed a request for a hearing with an Administrative Law Judge ("ALJ"). (*Id*.). Plaintiff appeared and testified before the ALJ on February 18, 2011. (*Id*.). On March 11, 2011, the ALJ issued a decision finding that Plaintiff suffered from the severe impairments of right eye retinal

detachment, bipolar disorder, depression, obesity, and headaches and was unable to perform past relevant work. (TR 23; TR 29). However, the ALJ found that Plaintiff was not disabled under the Social Security Act because she retained the Residual Functional Capacity to perform jobs that exist in significant numbers in the national economy. (TR 29-30).

Following the ALJ's denial of Plaintiff's claim, Plaintiff requested review of the ALJ's decision with the Appeals Council, Office of Hearings and Appeals, Social Security Administration. (TR 15). On May 14, 2012, the Appeals Council denied Plaintiff's request for review. (TR 1). The Appeals Council adopted the ALJ's decision as the final decision of the Commissioner. (*Id*.).

On July 5, 2012, Plaintiff filed her Complaint with this Court for judicial review of the Commissioner's decision denying her claim, which is the subject of this appeal. (Doc. 1). Plaintiff has filed an opening brief (the "Brief") seeking judicial review of the ALJ's denial of her claim. (Doc. 12). In the Brief, Plaintiff argues that the Court should overturn the ALJ's decision and remand the case with instructions to award benefits because the ALJ's decision contains legal error as it lacks substantial justification to support the ALJ's conclusions. (*Id*. at 13).

**II.    LEGAL STANDARD**

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and

the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A.     Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982)). Disability has "a severity and durational requirement for recognition under the [Social Security] Act that accords with the remedial purpose of the Act." *Flaten v. Sec'y of Health & Human Svcs.*, 44 F.3d 1453, 1459 (9th Cir. 1995).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is "under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. at §

423(d)(2)(A).

"A claimant bears the burden of proving that an impairment is disabling." *Matthews*, 10 F.3d at 680 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Thus, "[t]he applicant must show that [s]he is precluded from engaging in not only h[er] 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment." *Id*. (quoting 42 U.S.C. § 423(d)(2)(A)).

### B.     Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry and the claim will be denied. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

Second, if the claimant is not gainfully employed, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. at § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id*. at § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id*. at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Third, having found a severe impairment, the ALJ next determines whether the impairment "meets or medically equals the criteria of any of the listings in the Listing of

Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1)." SSR 12-2p, 2012 WL 3104869 at *6 (July 25, 2012). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. 20 C.F.R.§ 404.1520(d).

When a claimant's impairments do not meet or equal a listed impairment under appendix 1, the ALJ will assess a claimant's Residual Functional Capacity ("RFC"). *Id*. The ALJ bases the RFC assessment on all relevant evidence in the case record. *Id*. The ALJ considers the effects of all of the claimant's medically determinable impairments, including impairments that are not severe. *Id*.

At steps 4 and 5, the ALJ uses the RFC assessment to determine whether the claimant is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). *Id*.; 20 C.F.R. § 404.1520(a). If the person is able to do any past relevant work, the ALJ will find that he or she is not disabled. *Id*. If the person is not able to do any past relevant work or does not have such work experience, the ALJ determines whether he or she can do any other work. *Id*. The usual vocational considerations apply (age, education, and work experience). *Id*.; 20 C.F.R. § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

With regard to steps 1-5 in this case, the ALJ found that Plaintiff: (1) had satisfied the first step and had not engaged in substantial gainful activity since February 26, 2009 (TR 23); and (2) had fulfilled the second step and shown that she suffered from the following severe impairments: right eye retinal detachment, bipolar disorder, depression, obesity, and headaches. (*Id*.). With regard to the third step (3), the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations. (TR 24). Therefore, the ALJ determined Plaintiff's RFC and found she had the capacity to perform a full range of work at all exertional levels but with some specific restrictions. (TR 25). As a

result of this analysis, the ALJ found at the fourth step (4) that Plaintiff is "unable to perform any past relevant work" as a phlebotomist, manager (advertisement), engineer assistant (bio-medical engineering), customer service (advertising/marketing), and in billing. (TR 29). At the last step (5), however, relying on the testimony of a vocational expert, the ALJ found that given Plaintiff's age, education, work experience, and RFC that Plaintiff is capable of making a successful adjustment to other work and performing jobs that exist in significant numbers in the national economy. (TR 29-30). Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. (TR 30).

**III.   ANALYSIS**

Plaintiff makes three arguments for why the Court should overturn the ALJ's decision. Specifically, Plaintiff argues that the ALJ committed procedural error by (1) determining an RFC that differed from the State agency's findings without providing substantial evidence (Doc. 12 at 11-12), (2) by rejecting the assessments of two consultative examiners and Plaintiff's treating physician without giving clear and convincing reasons (*id*. at 7-11), and (3) by rejecting Plaintiff's symptom testimony without substantial evidence (*id*. at 12-13). The Court will address each of Plaintiff's arguments in turn.

**A.   Whether the ALJ Properly Used the State Agency's Findings**

Plaintiff argues that the ALJ committed procedural error by determining an RFC that differed from the state agency's findings without giving substantial evidence for the differences. (Doc. 12 at 11-12). The ALJ indicated that his RFC was based on the state agency's findings. (TR 28). The state agency psychologist, Nicole Lazorwitz, PsyD, found in Plaintiff's Functional Capacity Assessment, that Plaintiff "appears to have a fair ability to sustain attention throughout extended periods of time (up to two hours at a time)," that Plaintiff has "a fair ability to perform at a consistent pace," and that Plaintiff "has a fair ability to interact appropriately with the general public, co-workers, and supervisors." (TR 458). The ALJ concluded that Plaintiff "is able to sustain attention throughout extended periods of time" and "[s]he can work at a consistent pace, and has

the ability to react appropriately with the general public, co-workers and supervisors." (TR 25).

Plaintiff's argument appears to hinge on the fact that the ALJ did not use the word "fair" in his determination. The Court finds this distinction does not support Plaintiff's claim of legal error. The ALJ's conclusion and RFC assessment are consistent with the state agency's findings. The ALJ clearly found Plaintiff had an adequate ability to work as he described; having a "fair ability" to do something means virtually the same thing. Plaintiff has explained no significant difference between someone having an adequate ability and a fair ability.

Plaintiff also attempts to argue that Dr. Lazorwitz found Plaintiff's ability to sustain attention and interact with the public, coworkers, and supervisors was "moderately limited" because this is what Dr. Lazorwitz checked off in a separate section of her assessment, and this finding was somehow inconsistent with the ALJ's determination. (Doc. 12 at 11-12). Plaintiff's argument, however, is unpersuasive because Dr. Lazorwitz's conclusions, that the ALJ adopted, are clearly marked under the section of her report titled "Functional Capacity Assessment." (TR 458). This section "is for recording the RFC determination. It is in this section that the **actual mental RFC assessment is recorded**." Social Security Administration, Program Operations Manual System (POMS), DI 24510.060(B)(4) (emphasis in original). The part of the report that Plaintiff relies on is the "Summary Conclusions" and is "**merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation, and **does not constitute the residual functional capacity assessment**." *Id*. at DI 24510.060(B)(2) (emphasis in original). The ALJ's RFC is almost identical to the Functional Capacity Assessment of the state agency psychologist. Consequently, Plaintiff's arguments are unfounded and the Court finds the ALJ did not commit procedural error in how he utilized the state agency's findings.

> **B.     Whether the ALJ Properly Rejected the Medical Assessments of Treating Sources**

- 7 -

Plaintiff also argues that (1) the ALJ failed to give any reason for rejecting or ignoring the reports of the two mental consultative examiners that the Commissioner sent Plaintiff to be evaluated by, and (2) the ALJ failed to properly reject the opinion of Plaintiff's treating physician. (Doc. 12 at 7-11).

### 1. The ALJ did not err by not addressing the consultative examiners' reports.

During the adjudication of Plaintiff's claim, the Commissioner sent Plaintiff to two mental consultative examinations performed by Shelly K. Woodward, Ph.D., and James E. Huddleston, Ph.D, respectively. Both of these examiners submitted reports. (TR 435-41; 685-93). In reaching his decision, the ALJ did not address how much weight he accorded either report. Plaintiff's initial argument is that the reports of these consultative examiners supported Plaintiff's claim and the ALJ committed procedural error by denying Plaintiff's claim and failing to address them. (Doc. 12 at 7-8).

Dr. Woodward opined that Plaintiff "may have difficulty maintaining attention and concentration for extended periods of time" and that Plaintiff "appears to have mild impairment in social interactions." (TR 439). Dr. Huddleston also opined that Plaintiff "may suffer moderate impairment in the ability to carry out instructions, sustain a normal routine, and maintain attention and concentration," but found that Plaintiff showed "no evidence of impairment" in social interaction. (TR 692). As discussed above, *see supra* Section III.A, based on the state agency's finding the ALJ concluded that Plaintiff "is able to sustain attention throughout extended periods of time" and "has the ability to react appropriately with . . . co-workers and supervisors." (TR 25).

In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). An ALJ must assess a claimant's RFC "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id*. § 416.923.

"However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted) (affirming district court's holding that the ALJ was not required to discuss every piece of evidence and that the ALJ's decision was supported by substantial evidence). "[E]vidence that is neither significant nor probative" does not need to be discussed. *Id.*

Plaintiff argues that the "opinions have significant differences from the ALJ's RFC" and "there is no evidence suggesting the opinions were incorporated into [the ALJ's RFC analysis]." (Doc. 12 at 8). Ultimately, the ALJ found Plaintiff had an adequate ability to interact with others and maintain concentration and pace. (TR 25). The Court finds the ALJ's conclusion that Plaintiff has an adequate ability to interact with others and an adequate ability to sustain attention throughout extended periods of time is not significantly different than having mild or no impairment in social interactions and merely the possibility of having difficulty maintaining attention and concentration. The ALJ's determination was based on substantial evidence in the form of the state agency's findings, *see infra* Section III.B.2. Accordingly, the ALJ was not required to address the assessments of Dr. Woodward and Dr. Huddleston.

**2.     The ALJ properly rejected the treating physician's assessment.**

Plaintiff also argues that the ALJ rejected the assessment of her treating physician, Dr. Zerrudo, without providing clear and convincing reasons. (Doc. 12 at 8-11). In his decision, the ALJ explained that Dr. Zerrudo's opinion appeared to be too restrictive based on the other evidence in the record (TR 27) and the ALJ assigned significant weight to the state agency examiner's opinion because it was (1) based on a thorough review of the evidence and familiarity with Social Security rules and regulations, (2) the opinion was well supported by the evidence in the record, and (3) the opinion was not inconsistent with other substantial evidence in the record (TR 28).

The ALJ is not required to adopt the opinion of a treating physician. The ALJ is merely required to make a decision supported by substantial evidence. As stated above,

*see supra* Section II, if substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). The Court will set aside the ALJ's decision "only if it is not supported by substantial evidence or it is based on legal error." *Magallanes*, 881 F.2d at 750. Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720.

The Court finds that the ALJ did base his decision on substantial evidence. The ALJ explained that he gave significant weight to the state agency examiner because "it is well supported by the medical evidence . . . ." (TR 28). The "opinion of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes*, 881 F.2d at 752). "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan*, 242 F.3d at 1148 (citing *Magallanes*, 881 F.2d at 751). "When there is a conflict between the opinions of a treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons supported by substantial evidence in the record for doing so.'" *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "[T]he contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, [however,] it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Id*. at 1149 (citing *Magallanes*, 881 F.2d at 752).

In this case, the state agency examiner's opinion constituted substantial evidence because, as the ALJ explained, it was consistent with the record as a whole. *See* (TR 28). The ALJ's explanation of the record as a whole throughout his analysis constituted the requisite specific and legitimate reasons for reaching his conclusion. First, the ALJ explained that the medical evidence showed that Plaintiff's CT scans were normal,

treatment notes from Swagel Wooten Eye Center said that she refused refraction correction and was using over the counter lenses for near acuity, her Global Assessment of Functioning indicated only mild to moderate symptoms or difficulties, and that medications had been relatively effective. (TR 26-27). Next, the ALJ noted Plaintiff's history of inconsistent statements and evidence suggesting she was "engaging in possible malingering or misrepresentation" and "symptom magnification." (TR 27). Then the ALJ addressed and rejected medical opinion evidence that was not consistent with the record. (*Id.*). Finally, the ALJ addressed and rejected third party testimony given by Plaintiff's mother. (TR 28).

In addition to the objective evidence throughout the record that was consistent with the state agency physician's assessment, the ALJ explained that his decision was influenced by the specific and legitimate reason he gave for assigning little weight to Dr. Zerrudo's opinion, namely that it too was too restrictive based on the evidence in the record. (TR 27). The ALJ went on to explain this reason and stated, "[t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (TR 27-28). Then the ALJ concluded that because good reasons existed for questioning Plaintiff's reliability, Dr. Zerrudo's reliance on her testimony tainted the weight of his opinions. (TR 28).

Thus, the Court finds the ALJ articulated specific and legitimate reasons for disregarding the assessments of Plaintiff's treating physicians, including Dr. Zerrudo, and he relied on substantial evidence (i.e. the state agency physician's assessment consistent with the medical record) in reaching his conclusion. At the very least, the evidence cited by the ALJ was susceptible to more than one rational interpretation. Therefore, the ALJ's conclusion must be upheld. *See Gallant*, 753 F.2d at 1453 ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence.") (citations omitted).

### C.     Whether the ALJ Properly Rejected Plaintiff's Symptom Testimony

Finally, Plaintiff argues that the ALJ erred in finding her testimony was not credible. (Doc. 12 at 12-13). To reject the subjective testimony of a claimant, the ALJ must make specific findings based on the record. The District Court of California has addressed this standard in a well-reasoned opinion and this Court has adopted that Court's reasoning before in concluding that the ALJ must make specific findings supported by the record to explain his credibility evaluation.[1]

---

[1] The District Court of California set forth its reasoning as follows:

> In *Bunnell*, the court addressed confusion regarding the standard for evaluating the credibility of subjective complaints and endorsed the standard set forth in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986), *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 583–584 (9th Cir.1988) and *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir.1987). *Bunnell*, 949 F.2d at 345. The so-called "*Cotton* standard" requires the claimant to produce objective medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain. Once that evidence is produced, the adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence fully corroborating the alleged severity of the pain. *Bunnell*, 949 F.2d at 343, 345 (citing *Cotton*, 799 F.2d at 1407). Rather, the adjudicator must "specifically make findings which support this conclusion. These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 949 F.2d at 345–46 (internal citation and quotation omitted).
>
> Some subsequent decisions have stated that, unless there is affirmative evidence that a claimant is malingering, the ALJ must articulate "clear and convincing" reasons for rejecting subjective complaints. *See, e.g., Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir.1999); *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1296 (9th

Cir.1999); *Reddick*, 157 F.3d at 722; *Light*, 119 F.3d at 792; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995); *Smolen*, 80 F.3d at 1284; *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). Other decisions state that the ALJ must make specific findings based on the record, but do not use the "clear and convincing" formula. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir.1999); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir.1998); *Chavez v. Department of Health and Human Services*, 103 F.3d 849, 853 (9th Cir.1996); *Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir.1995); *Moncada*, 60 F.3d at 524; *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir.1995) (per curiam); *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir.1995).

The "clear and convincing" language appears to have been derived from *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir.1989), which states that "[t]he Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering." *Swenson*, 876 F.2d at 687 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984)). In *Gallant*, however, the court did not hold, or even affirmatively state, that an ALJ is required to provide "clear and convincing" reasons for rejecting excess pain testimony whenever there is no evidence of malingering. Instead, the court merely observed that no witness had testified that the claimant was malingering, that "[n]o clear and convincing reasons were provided by the ALJ" for his rejection of the claimant's testimony, and that the evidence relied on by the ALJ for his credibility evaluation was "insubstantial." *Gallant*, 753 F .2d at 1455, 1456.

*Bunnell* did not cite either *Gallant* or *Swenson*, and neither *Bunnell* nor the cases it did cite with approval (that is, *Cotton*, *Varney*, and *Gamer*) use the "clear and convincing" formula. It thus appears that the "clear and convincing" standard is an unwarranted elaboration of the substantial evidence standard of review, and that it was not part of the *Cotton* test adopted

- 13 -

Turning to the ALJ's decision in this case, the Court finds the ALJ did in fact make specific findings supported by the record in explaining why he disregarded Plaintiff's subjective complaints. First, the ALJ found Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her symptoms were not credible because they were not supported by the medical evidence. (TR 26). While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins*, 261 F.3d at 856-57; *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003).

The ALJ noted that Plaintiff claimed in a headache questionnaire in April 2009, that she experienced headaches on a daily basis that lasted the entire day. Approximately four months later, in July 2009, Plaintiff told her treating physician, Allison Kaplan, M.D., that her typical migraine frequency was once every 3-4 weeks and the duration of each was usually less than one day. (TR 26); (TR 462). Then in another headache questionnaire that Plaintiff completed in September 2009, Plaintiff claimed again that her headaches were daily and continuous. Further, CT scans of Plaintiff's brain in 2007 and 2010 revealed no acute or sub-acute abnormalities. (TR 26).

---

> in *Bunnell*, where the en banc court attempted to clarify the law. Any difference between the standards may be more apparent than real. There does not appear to be any principled distinction between the two standards as they have been applied. To the extent that there is or may be a conflict, however, *Bunnell* must control since it was an en banc decision. Accordingly, this Court will adhere to *Bunnell's* requirement that the ALJ make "specific findings" supported by the record to explain his credibility evaluation, rather than imposing the arguably more exacting "clear and convincing" requirement suggested by *Morgan* and its predecessors.

*Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL 1899797, at *2 (C.D. Cal. Dec. 19, 2000).

1    Second, the ALJ found Plaintiff refused refraction correction and was using over
2 the counter lenses for near acuity. (*Id*.). "[U]nexplained, or inadequately explained,
3 failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in
4 assessing credibility of testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991);
5 *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social
6 Security disability claimant's failure to follow treatment advice as a factor in assessing
7 Social Security disability claimant's credibility).

8    Third, the ALJ noted that Plaintiff had been prescribed and had taken the
9 appropriate medications for the alleged impairments and that the medical records and
10 Plaintiff herself revealed that the medications were relatively effective in controlling
11 Plaintiff's symptoms. (TR 27). "Impairments that can be controlled effectively with
12 medication are not disabling for the purpose of determining eligibility for [disability]
13 benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)
14 (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lovelace v. Bowen*, 813
15 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming
16 a denial of benefits and noting that the claimant's impairments were responsive to
17 medication)).

18    Fourth, the record also contained evidence of exaggeration.  In weighing
19 credibility, the ALJ may consider evidence that a claimant exaggerated her symptoms
20 when evaluating the claimant's subjective complaints of pain. *See Hall v. Astrue*, No.
21 CV 12-3494 JC, 2012 WL 3779080, at *4 (C.D. Cal. Aug. 31, 2012); *Jones v. Callahan*,
22 122 F.2d 1148, 1152 (8th Cir. 1997). As the ALJ noted in his decision, Dr. Huddleston
23 "found that credibility was an issue and it was his impression that the claimant may have
24 engaged in some degree of symptom magnification" and "psychiatric progress notes in
25 September 2010 note the claimant to be somewhat malingering." (TR 27).

26    Finally, the record reflected a series of inconsistent statements as explained by the
27 ALJ. (TR 27).

28    The Court finds the ALJ's credibility finding was a "reasonable interpretation" of

the evidence and was supported by substantial evidence in the record, accordingly, "it is not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).  Therefore, the ALJ did not err in rejecting Plaintiff's subjective complaints.

## IV.   CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

Dated this 30th day of July, 2013.

James A. Teilborg
Senior United States District Judge